USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/9/26__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENTREX, INC., | 25 Civ. 1338 (VM) |
| Plaintiff, | |
| - against - | DECISION AND ORDER |
| THE LAUNDRESS, LLC f/k/a/ THE LAUNDRESS, INC., | |
| Defendant. | |

**VICTOR MARRERO, United States District Judge.**

Plaintiff Entrex, Inc. ("Entrex") brings this action against defendant The Laundress, LLC f/k/a The Laundress, Inc. ("Laundress"). In its First Amended Complaint ("FAC," Dkt. No. 23), Entrex alleges that Laundress breached the exclusive distribution agreement (the "Agreement") between the two firms. Entrex asserts additional claims against Laundress for breach of the implied covenant of good faith and fair dealing, indemnification, and negligence. Laundress moves to dismiss all Entrex's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (See Dkt. No. 25.) For the reasons stated below, Entrex has sufficiently pleaded its breach of contract claim but not its non-contract claims. Laundress's motion to dismiss is therefore **GRANTED IN PART** and **DENIED IN PART.**

## I.   BACKGROUND

A.   FACTUAL BACKGROUND[1]

Laundress is a New York-based corporation that manufactures and sells laundry products, such as detergents, dryer sheets, and stain removers. (See FAC ¶ 8; "Agreement," Dkt. No. 23-1 at 14-15.) On August 21, 2008, Laundress entered into an agreement with Entrex, a Japanese corporation, under which Laundress agreed to use Entrex as the exclusive distributor of its products in Japan. (See FAC ¶ 11; Agreement ¶ 2.3.)

The Agreement provided for an initial one-year term. (See FAC ¶ 13; Agreement ¶ 4.) The Agreement further provided that it would be automatically extended for additional one-year terms as long as Entrex reached a sales target of $200,000 each contract year, "unless no less than 60 days to the expiration of [the operative contract term]" either party notified the other of its decision to terminate the contract "as of the expiration of the [contract term]." (FAC ¶ 14; Agreement ¶ 4.) As relevant here, The Agreement also provided that Laundress would indemnify Entrex "from and against all

---

[1] Except as otherwise noted, the following background is drawn from Entrex's FAC and the documents attached thereto, consistent with the standard articulated in Section II below. The Court takes all facts alleged in the FAC to be true and construes all justifiable inferences arising therefrom in the light most favorable to Entrex, as required under the standard set forth in Section II below.

losses, claims, damages or other costs and expenses" arising out of Laundress's breach of the Agreement or third-party claims and liabilities.[2] (Agreement ¶ 10.2; see FAC ¶ 38.)

From 2008 through 2022, Entrex met its sales targets under the Agreement and the Agreement automatically renewed for successive one-year terms. (See FAC ¶ 15.) In November 2022, Laundress issued a recall notice for some of its products via a post on the social media website Instagram and an email to Entrex. (See FAC ¶¶ 23-24; Dkt. Nos. 23-2, 23-3.) According to the notice, there was a "potential presence of elevated levels of bacteria" in some of Laundress's products. (Dkt. No. 23-3.) The notice instructed consumers to "immediately stop using all The Laundress products in [their] possession." (Dkt. No. 23-2.) The products affected by the recall included those sold by Entrex at the time. (See FAC ¶

---

[2] The indemnification clause provides in full:

> The Laundress shall indemnify and hold harmless Distributor from and against all losses, claims, damages or other costs and expenses of any nature, including reasonable attorneys' fees and costs, whatsoever arising directly or indirectly out of (i) the breach of any warranty, representation or agreement made by The Laundress in this Agreement; (ii) any claim by a third party that any of the Products infringes any patent, trademark, trade secret or other intellectual property right of such third party; (iii) any liability resulting from any personal injury or property damage arising out of or due to the quality or condition of or inherent defect in the Products, including but not limited to, any imperfection, substandard quality, contamination, packaging, processing or other condition relating to the Products.

(Agreement ¶ 10.2.)

25.) Pursuant to the recall, Entrex ceased selling Laundress products. (See FAC ¶ 28.)

Laundress paid Entrex approximately $497,000 in response to "invoices provided to The Laundress in connection to the recall." (FAC ¶ 39.) Laundress also informed Entrex that it was "upgrading" its factory and planned to sell its products in international markets again in the future. (FAC ¶ 33-35.) The Agreement again automatically renewed for a new one-year term beginning in August 2023. (See FAC ¶ 15.) Nevertheless, in September 2023, Laundress notified Entrex via email that it was terminating its distribution agreement with Entrex "effective as of December 31, 2023." (FAC ¶ 40; Dkt. No. 23-5.) In March 2024, Laundress's Chief Executive Officer confirmed the termination of the Agreement in response to an inquiry from Entrex. (See FAC ¶ 44; Dkt. No. 23-6.)

B.    PROCEDURAL HISTORY

Entrex filed its original complaint in this matter on February 26, 2025. (See Dkt No. 6.) Entrex's original complaint named five defendants: (1) The Laundress, Inc.; (2) The Laundress, LLC; (3) Unilever United States Inc.; (4) Conopco, Inc. d/b/a Unilever Home and Personal Care USA; and (5) XYZ Corp. #1-10. (See id.) Pursuant to this Court's Individual Practices, the parties completed an exchange of letters concerning Laundress's contemplated motion to dismiss

4

on June 11, 2025. (See Dkt. No. 19.) Following that exchange, Entrex filed its FAC on June 20, 2025. (See Dkt. No. 23.)

In its FAC, Entrex names only Laundress — described as "The Laundress, LLC f/k/a The Laundress, Inc." — as a defendant and alleges four causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) indemnification; and (4) negligence. (See FAC.) On July 16, 2025, Laundress filed its motion to dismiss and supporting memorandum of law. (See Dkt. Nos. 25, 26.) Entrex filed its brief in opposition on August 12, 2025. (See "Opp'n," Dkt. No. 27.) Laundress filed its reply brief on August 27, 2025. (See "Reply," Dkt. No. 28.)

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). This standard is met "when the plaintiff pleads factual content that allows the

5

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In deciding a Rule 12(b)(6) motion, the court draws all reasonable inferences in favor of the non-moving party. See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013) (citation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the allegations in the complaint as well as "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

### III. DISCUSSION

A.    BREACH OF CONTRACT

To state a claim for breach of contract under New York law, a plaintiff must plead: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). "To plead these elements, 'a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue.'" Id. at 189 (quoting Wolff v. Rare Medium,

6

Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)). "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." Frontline Processing Corp. v. Merrick Bank Corp., No. 13-CV-3956, 2014 WL 837050, at *2 (S.D.N.Y. Mar. 3, 2014).

In moving to dismiss, Laundress argues that the FAC (1) fails to sufficiently allege any breach of the Agreement because the FAC does not identify the contractual provisions breached or otherwise explain how Laundress's conduct constitutes an actionable breach under the Agreement; and (2) fails to allege damages to Entrex resulting from any breach.[3] (See "Mot.," Dkt. No. 26 at 10-11.) The Court reviews these arguments in turn.

1.  Breach

Entrex plausibly alleges that Laundress breached the Agreement in two ways: (1) by providing Entrex with "contaminated goods" and (2) by terminating the Agreement in violation of the Agreement's provisions governing termination. (FAC ¶ 52.)

First, Entrex has sufficiently alleged that Laundress breached the Agreement by providing Entrex with

---

[3] Laundress does not argue that Entrex has failed to allege either the existence of an agreement or adequate performance by Entrex. The FAC includes the Agreement in an attachment as well as allegations of Entrex's performance under the Agreement. (See Agreement; FAC ¶¶ 15, 25.)

"contaminated" products. (FAC ¶ 52.) Under the terms of the Agreement, Entrex purchased Laundress's products for the purpose of reselling them in Japan. (See FAC ¶ 11; Agreement ¶ 5.) On or about November 17, 2022, Laundress issued a "safety recall notice" to its trading partners, including Entrex, alerting them to "life-threatening bacteria" in Laundress's products. (FAC ¶ 23.) Following that announcement, Laundress published a post to its Instagram page and sent an email to Entrex, warning that its products contained a "potential presence of elevated levels of bacteria." (Dkt. Nos. 6-2, 6-3.) Laundress also published a list of the products included in the recall, which stated that "[c]onsumers should immediately stop using the recalled products." (Dkt. No. 6-4.) The Laundress products covered by the recall included those sold to Entrex by Laundress and sold by Entrex at the time. (See FAC ¶¶ 24-25.) By providing Entrex with defective products, Laundress breached the Agreement.

Laundress argues that Entrex's allegations concerning Laundress's provision of "contaminated goods" cannot support its breach of contract claim because Entrex fails to identify the "specific contractual provisions" that Entrex alleges it breached. (Mot. at 11-12.) That argument is insufficient to defeat Entrex's claim.

8

Laundress is correct that courts likely will dismiss breach of contract claims where the complaint fails to identify the specific provision breached. See, e.g., Spencer-Smith v. Ehrlich, No. 23-CV-02652, 2024 WL 709291, at *12 (S.D.N.Y. Feb. 21, 2024) (collecting cases). That rule is rooted in two pleading requirements. First, a complaint must "give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial." Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (quoting Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc., 10 F. Supp. 2d 334, 344 (S.D.N.Y. 1998)). Second, in the breach of contract context specifically, a plaintiff must establish that the terms of parties' agreement were "definite and explicit" so a court can determine whether a breach has occurred. Caro Cap., LLC v. Koch, No. 20-CV-6153, 2021 WL 1595843, at *6 (S.D.N.Y. Apr. 23, 2021) (quoting Foros Advisors LLC v. Digital Globe, Inc., 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018)). Where a complaint does not identify the contractual promise allegedly breached, the defendant would lack adequate notice as to the basis of the plaintiff's claim and similarly courts would encounter difficulties applying standards against which to judge the breach alleged. See id.

9

Entrex fails to include in its allegations the paragraph or language of the specific contractual provision at issue in its "contaminated products" allegations. But that failure is not fatal to its claim. The concerns of lack of notice and specificity that generally motivate dismissal of a complaint for failure to identify the operative contractual provision are not present here. Entrex attached the Agreement to its FAC. It is a relatively short document of eleven pages. Paragraph 10.1 of the Agreement includes Laundress's warranty that "all Products sold to [Entrex] pursuant to this Agreement . . . are free from defects in materials and workmanship and shall be of commercial quality." (Agreement ¶ 10.1.) Entrex's allegations that it received from Laundress products "contaminated" with "life-threatening bacteria," along with the language of Paragraph 10.1, not only put Laundress on notice as to the nature of Entrex's claim but also plausibly allege that Laundress breached its obligation to provide products of "commercial" quality. (See FAC ¶¶ 23-26, 52; Agreement ¶ 10.2.) The ordinary meaning of "commercial" is "suitable or intended for use in commerce." Commercial, Oxford English Dictionary, https://www.oed.com/dictionary/ commercial_adj?tab=meaning_and_use#8736525 (last visited January 8, 2026). Laundress's recall notices, which advised consumers to "immediately stop using" the recalled products,

recognized that its products, including those sold to Entrex pursuant to the Agreement, were not suitable for commerce. (Dkt. No. 6-4.) Additionally, Laundress appears to have been aware that the provision of recalled goods constituted a breach of its contract with Entrex as it paid Entrex approximately $497,000 in "response to invoices provided to The Laundress in connection to the recall." (FAC ¶ 39.) Entrex's failure to cite the specific provision implicated by its "contaminated products" allegations is therefore not fatal to its claim for breach of contract.

Entrex further sufficiently alleges that Laundress breached the Agreement by terminating the Agreement on September 28, 2023, effective December 31, 2023. "When a contract's terms include a procedure for termination, . . . New York law demands strict compliance with that procedure." Brueckner v. You Can Beam LLC, No. 20-CV-3323, 2021 WL 2158733, at *4 (S.D.N.Y. May 27, 2021). "[F]ailure to effect termination according to the terms of a contract constitutes a breach." Raviv v. Mirror Biologics, Inc., No. 22-CV-6847, 2024 WL 2798870, at *18 (S.D.N.Y. May 31, 2024).

The Agreement, read as a whole, provides two processes for termination. First, either party may terminate the Agreement effective as of the expiration of the operative one-year term by sending written notice to the other party

"no less than 60 days [prior] to the expiration of" the term. (Agreement ¶ 4(b).) Second, if a party breaches or defaults on the Agreement, the non-defaulting party may terminate the Agreement prior to the expiration of a one-year term, subject to notice requirements in some instances. (See id. ¶ 11.) The parties agree that the first method of termination is at issue here.

Laundress's termination of the Agreement was clearly contrary to the procedure for termination of the contract absent default by one party. As Entrex alleges and Laundress does not contest, Entrex met the sales goals established by the contract during the one-year term ending on August 21, 2023. (See FAC ¶ 15.) Laundress did not notify Entrex of its decision to terminate the contract at least 60 days before the termination of that term. (See id. ¶ 19.) Thus, absent default on the part of Entrex, the first date on which Laundress could effectively terminate the Agreement was August 21, 2024 — the expiration of the one-year term that began on August 21, 2023. Nevertheless, in an email dated September 28, 2023, Laundress stated that it was terminating the Agreement with Entrex "effective as of December 31, 2023." (Dkt. No. 23-5.) Because termination effective December 31, 2023, was contrary to the Agreement's termination provisions,

it breached the Agreement. See Raviv, 2024 WL 2798870, at *24-25.

Laundress does not dispute that termination effective December 31, 2023, was contrary to the terms of the Agreement. Instead, Laundress argues that its termination of the contract was actually effective as of August 15, 2024, and therefore consistent with the terms of the contract.[4] (See Mot. at 12.) That argument is belied by the language of the email terminating the contract, which stated that it was "effective as of December 31, 2023." (Dkt. No. 23-5.) Additionally, Clemens Herrmann, Laundress's Chief Executive Officer, confirmed the termination of the agreement in another email on March 1, 2024. (See Dkt. No. 23-6.) Entrex has therefore adequately alleged that Laundress breached the Agreement by terminating it in contravention of the provisions governing termination.

Accordingly, Entrex has plausibly alleged that Laundress breached the Agreement by providing Entrex with defective

---

[4] The August 15, 2024, date reflects a difference in the parties view as to whether the term ended on August 15, 2024, or August 21, 2024. (Compare Mot. at 12 (identifying August 15, 2024, as the expiration date of the operative contract term) with Opp'n at 5 (identifying the date as August 21, 2024).) That disagreement stems from an ambiguity in the Agreement: it provides that the initial term "terminat[es] on one year from the date signed, August 15, 2009," although the actual date signed on the face of the Agreement is August 21, 2008. (Agreement ¶ 4(a).) The resolution of that ambiguity has no effect on the disposition of Laundress's Motion. The Court has adopted the August 21 date for purposes of this Decision as that date is alleged by Entrex. (See FAC ¶ 11.)

products and terminating the Agreement in violation of the termination provisions.

2.    Damages

Laundress argues that even if the FAC plausibly alleges a breach of the Agreement, it fails to allege resulting damages.

Allegations that a plaintiff "suffered damages without particular facts as to how [the plaintiff] was damaged does not satisfy Twombly and Iqbal." Int'l Bus. Machines Corp. v. Dale, No. 11-CV-951, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011). But Entrex alleges facts to support its claim for damages. Pursuant to the terms of the Agreement, Entrex paid Laundress in exchange for Laundress's products. (See FAC ¶¶ 11, 25; Agreement ¶¶ 5.2, 5.3.) Entrex alleges that some of those products were defective because of bacterial contamination and thus fell below the standard of "commercial quality" required by the Agreement. (See FAC ¶¶ 23-26; Agreement ¶ 10.1.) It is plausible that Entrex was deprived of the benefit of its bargain and therefore suffered damages as a result of Laundress's alleged breach.

Laundress argues that Entrex fails to plead damages because the FAC does not contain allegations as to the "amount of contaminated product Entrex purportedly received, when it was received, its cost, value, condition, or what ultimately

14

happened to the product." (Mot. at 7.) But such allegations, which go to the precise *amount* of damages suffered by Entrex, are not necessary to establish the *fact* of damages to Entrex resulting from Laundress's breach. See, e.g., Samsung Display Co. v. Acacia Rsch. Corp., No. 14-CV-1353, 2014 WL 6791603, at *3 (S.D.N.Y. Dec. 3, 2014) ("The fact that [the plaintiff's] damages are 'difficult to ascertain' does not strip its claim of plausibility.") Furthermore, Entrex alleges that it suffered lost sales and harm to its business reputation as result of Laundress's provision of contaminated goods. (FAC ¶¶ 32, 37, 47-48.) Allegations of lost profits and damages to business reputation are sufficient to withstand a motion to dismiss. See Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (finding allegations of damage to "goodwill, standing and reputation" to be "sufficient to survive a motion to dismiss"); Comfort Inn Oceanside v. Hertz Corp., No. 11-CV-1534, 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011) (finding allegations of "foregone commissions and dissatisfied customers" sufficient to allege damages). Furthermore, even if, as Laundress contends, Entrex's damages for lost profits eventually prove too speculative to support recovery, Entrex may be entitled to nominal damages as a result of Laundress's breach. See Luitpold Pharms., Inc. v.

15

Ed. Geistlich Söhne A.G. Für Chemische Industrie, 784 F.3d 78, 87 (2d Cir. 2015); Saeco Vending, S.P.A. v. Seaga Mfg., Inc., No. 15-CV-3280, 2016 WL 1659132, at *7 (S.D.N.Y. Jan. 28, 2016) ("New York law provides that nominal damages are always available in a breach of contract suit.")

For the foregoing reasons, Entrex has plausibly alleged that Laundress breached the Agreement, specifically by providing contaminated goods and terminating the Agreement in violation of the terms governing termination, and that Entrex suffered damages as a result. Laundress's motion to dismiss Entrex's breach of contract claim will therefore be denied.

B.    BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

In its second cause of action, Entrex seeks to recover for Laundress's alleged breach of the covenant of good faith and fair dealing. (See FAC ¶¶ 54-59.)

Under New York law, "when a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant must be dismissed as duplicative of the breach of contract claim." Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017); see Harris v. Provident Life & Accident Ins., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good

16

faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

Entrex's claim for breach of the covenant of good faith and fair dealing, (see FAC ¶¶ 54-59), relies on the same facts as its breach of contract claim, (see id. at ¶¶ 49-53). The actions alleged as constituting Entrex's breach of the implied covenant – "furnishing contaminated goods, failing to remedy the furnishing of contaminated goods, bad faith dealings subsequent to the furnishing of contaminated goods, unlawful termination of the Agreement, unlawful assignment of the Agreement, and violation of the Notice provision of the Agreement," (id. at ¶ 56) - are identical to those alleged in support of Entrex's breach of contract claim, (see id. at ¶ 52). Because an implied covenant claim "will not stand if it is duplicative of a breach of contract claim," Entrex's claim for breach of the covenant of good faith and fair dealing will be dismissed. Negrete, 187 F. Supp. at 470.

C.    INDEMNIFICATION

In its third cause of action, Entrex seeks indemnification for its "losses, claims, damages, attorneys' fees and expenses" stemming from Laundress's provision of contaminated products. (FAC ¶ 61.) Relying on the indemnification provision found at Paragraph 10.2 of the Agreement, Entrex alleges that "Laundress indemnifies Entrex

17

for all losses, claims, damages, attorneys fees, and expenses of any nature, including but not limited to, contamination of The Laundress Products." (Id. ¶ 61.) Paragraph 10.2 provides that Laundress will "indemnify and hold harmless" Entrex for (1) losses and damages arising from the "breach of any warranty, representation or agreement made by the Laundress;" (2) third party claims that a Laundress product infringes on the third party's intellectual property rights; and (3) "any liability resulting from any personal injury or property damage," including any damages resulting from "contamination" of Laundress products. (Agreement ¶ 10.2.)

Under New York law, contractual indemnity is generally viewed "as a mechanism that enables a party liable on a third-party claim, the indemnitee, to shift that loss to another, the indemnitor." BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) (collecting cases). "Accordingly, the default presumption in New York courts is that indemnification involves liabilities, losses, or claims associated with third-party suits, rather than contractual damages or losses between the contracting parties themselves." Id. Given that default presumption, "absent 'unmistakably clear' language in an indemnification provision that demonstrates that the parties intended the clause to cover first-party claims, an agreement between two parties

'to indemnify' each other does not mean that one party's failure to perform gives rise to a claim for indemnification." Lehman XS Tr., Series 2006-GP2 v. GreenPoint Mortg. Funding, Inc., 916 F.3d 116, 125 (2d Cir. 2019) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 21 (2d Cir. 1996)). Unless an indemnification clause refers "exclusively or unequivocally to claims between the indemnitor and indemnitee," the clause does not provide for indemnification for such claims. BNP Paribas, 778 F. Supp. 2d at 415 (internal quotation marks omitted).

Entrex alleges a first-party indemnification claim here. Entrex does not allege that it is liable for any third-party claims. Instead, Entrex rests its indemnification claim on the same alleged conduct that underlies its breach of contract claim. (See FAC ¶¶ 60, 62.) Entrex argues that the indemnification clause's coverage of "the breach of any warranty, representation or agreement made by The Laundress in this Agreement" provides the required "unmistakably clear" language to support indemnification for its first-party claim. (Opp'n at 17-18.) That argument is not persuasive.

Courts applying New York law have repeatedly held that language similar to that contained in the Agreement does not "exclusively or unequivocally" refer to first-party claims, as it is equally consistent with an intent to establish

19

indemnification from third-party claims arising from the indemnitor's breach. See Lehman, 916 F. 3d at 126-27; Sussman Sales Co., Inc. v. VWR Int'l, LLC, No. 20-CV-2869, 2021 WL 1165077, at *18-19 (S.D.N.Y. Mar. 26, 2021); Homeward Residential, Inc. v. Sand Canyon Corp., No. 13-CV-2107, 2014 WL 2510809, *13-16 (S.D.N.Y. May 28, 2014). For example, Sussman rejected a claim for first-party indemnification under a contract that provided for indemnification for any claim arising out of the "breach by [the defendant] of any term or provision of [the] [a]greement." Sussman, 2021 WL 1165077, at *19. The language of the Agreement here is indistinguishable from that at issue in Sussman and therefore cannot support a first-party indemnification claim under New York law. Because the indemnification provision is not "unmistakably clear" as to its application to first-party claims between Entrex and Laundress — and Entrex does not allege any third-party claims for which it seeks indemnification — Entrex's claim for indemnification will be dismissed. See Lehman, 916 F.3d at 127.

D.    NEGLIGENCE

In its fourth and final cause of action, Entrex seeks to recover under a theory of negligence. (See FAC ¶¶ 64-70.) For the reasons described below, this claim will also be dismissed.

20

To recover for negligence under New York law, a plaintiff must show: "(1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach." King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir. 1997). "New York courts have held that 'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'" Negrete, 187 F. Supp. at 471 (quoting Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190 (1987)). The independent legal duty underlying a claim of negligence "must spring from circumstances extraneous to" the contract. Id.

Entrex alleges that Laundress had a duty to "exercise reasonable care in designing, manufacturing, testing, marketing, labeling, selling, inspecting, and/or distributing The Laundress Products." (FAC ¶ 66.) Laundress breached that duty, Entrex alleges, by failing "to exercise reasonable care in preventing the Laundress Products to become contaminated with life-threatening bacteria." (Id. at ¶ 67.)

The duty to exercise reasonable care in order to provide products free from contamination is not distinct from Laundress's alleged duty under the contract not to "furnish[] contaminated goods." (FAC ¶ 52.) Instead, "the duties which

[Laundress] allegedly performed negligently are the same duties [Entrex] claim[s] [Laundress] was contractually obligated to perform under the [Agreement]." Negrete, 187 F. Supp. 3d at 471.

Entrex does not dispute the duplicative nature of its negligence claim in opposing Laundress's Motion, stating only that "there is no language in the Agreement at hand limiting damages." (Opp'n at 18.) But regardless of whether the Agreement purports to limit the availability of damages for negligence, New York law requires that a claim for negligence rest on a duty distinct from those imposed by contract. For the reasons discussed, Entrex's negligence claim does not meet that requirement.[5]

Entrex's negligence claim is additionally foreclosed under the economic loss doctrine, under which a plaintiff "cannot recover in tort for purely economic losses caused by the defendant's negligence." Travelers Cas. & Sur. Co. v. Dormitory Auth. State of N.Y., 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010). The economic loss doctrine "precludes

---

[5] The remainder of Entrex's argument concerning its negligence claim serves only to confirm this finding. Entrex argues that "The Laundress is responsible for 'the breach of any warranty, representation, or agreement made by The Laundress in this Agreement.' The Laundress represented that it would provide conforming goods. It was negligent in its failure to do so." (Opp'n at 18.) The quoted language assigning liability to Laundress for its representations is itself from the Agreement and therefore cannot serve as the basis of a legal duty independent of that contract. (See Agreement ¶ 10.2.)

parties from improperly attempting to convert contract claims to tort claims seeking the same damages." Negrete, 187 F. Supp. 3d at 472. As the FAC alleges and Entrex does not dispute, Entrex seeks to recover the same lost sales damages under its negligence claim as it does under its breach of contract claim. (See FAC ¶¶ 53, 70.) Entrex's claim of negligence will therefore be dismissed.

E.   LEAVE TO AMEND

Leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). It is within the "sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

The Court denies Entrex leave to amend its non-contract claims. In accordance with this Court's Individual Practices, the parties engaged in an exchange of letters in anticipation of Laundress's motion to dismiss. (See Dkt. Nos. 9, 15, 16,

23

18, 19.) Laundress's letters fully informed Entrex of Laundress's arguments regarding the defects in the original complaint. In fact, Entrex amended its original complaint in response to arguments raised in Laundress's letters. (See Dkt. Nos. 15, 16.) Despite being on notice of the deficiencies in its non-contract claims, Entrex failed to remedy those deficiencies in its FAC. That failure alone is sufficient reason to deny leave to again amend the complaint. See In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), aff'd sub nom., Bellikoff v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007). Additionally, Entrex has not requested leave to amend. Despite stating in its Opposition that "leave to amend should be granted as necessary," Entrex goes on to confirm that it "has made no such request to further amend the Complaint" and "stands behind its claims . . . in the FAC." (Opp'n at 18.) Nor has Entrex argued that it possesses facts that would cure

the deficiencies identified in its FAC. See Clark v. Kitt, No. 12-CV-8061, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."), aff'd, 619 F. App'x 34 (2d Cir. 2015). Lastly, "almost all of the problems with [the FAC] are 'substantive; better pleading will not cure [them].'" Id. (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000)). Leave to amend is therefore denied.

## IV.   ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Dkt. No. 25) of defendant The Laundress, LLC f/k/a The Laundress, Inc. ("Laundress") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the First Amended Complaint (Dkt. No. 23) filed by plaintiff Entrex, Inc. ("Entrex") is **GRANTED IN PART** and **DENIED IN PART**. Laundress's motion is denied as to Entrex's breach of contract claim. Laundress's motion is granted as to Entrex's claims for breach of the implied covenant of good faith and fair dealing, indemnification, and negligence. Those claims are therefore **DISMISSED**.

It is further **ORDERED** that leave to amend the First Amended Complaint is **DENIED**.

25

It is further **ORDERED** that Laundress shall file an answer to the remaining claim of breach of contract within twenty-one (21) days of the date of this Decision and Order.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 25.


**SO ORDERED.**

Dated:     9 January 2026
           New York, New York

_____
         Victor Marrero
         U.S.D.J.